```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

JEFFREY CRADDOCK et al.,         *

          Plaintiffs             *

     vs.                         *   CIVIL ACTION NO. MJG-13-3482

THEODORE MANSON, M.D. et al.,    *

          Defendants             *

*    *    *    *    *    *    *    *    *
```

MEMORANDUM AND ORDER RE: DISMISSAL

The Court has before it Defendants' Motion to Dismiss for Failure to File a Valid Certificate of Qualified Expert [Document 32] and the materials submitted relating thereto. The Court has held a hearing and had the benefit of the arguments of counsel.

This Memorandum and Order is issued to supplement the Court's statements regarding the instant Motion on the record of proceedings held this date.

I.   PERTINENT BACKGROUND

In brief, on July 2,[1] Plaintiff Jeffrey Craddock ("Plaintiff") suffered injury to his left leg and was transported first to Western Maryland Hospital Center, and then to the University of Maryland Medical Center ("Shock Trauma"). While at Shock Trauma, Plaintiff was treated by Defendant Theodore Manson, M.D. ("Dr. Manson"), a board certified orthopedic surgeon, who

---

[1]   All dates referred to herein are in the year 2010 unless otherwise indicated.

performed stabilization surgery on Plaintiff's left knee, which included adjusting external hardware and implanting internal hardware.[2]  Dr. Manson discharged Plaintiff to a rehabilitation center on July 19.  Plaintiff asserts that Dr. Manson negligently discharged him, rather treating him for a MRSA condition.[3]

On July 27, Plaintiff was transported back to Shock Trauma due to concerns of an infection.  Dr. Manson removed the external hardware, but not the internal hardware, and discharged Plaintiff back to the rehabilitation center.  Plaintiff contends that Dr. Manson negligently failed to remove the internal hardware.

Plaintiff contends that Dr. Manson's alleged negligence was the proximate cause of his serious injuries.

On June 13, 2013, Plaintiff filed a Certificate of Qualified Expert ("the Certificate") with the Maryland Health Care Alternative Dispute Resolution Office ("MHCADRO"), identifying Dr. William A. Petri, Jr., M.D., Ph.D., ("Dr. Petri") as an expert in the area of infectious diseases.  The MHCADRO transferred the case to this Court, and, on November 19, 2013, Plaintiff filed his Complaint.

By the instant Motion, Defendants seek dismissal on the ground that the Certificate is inadequate because Dr. Petri is

---

[2]  Dr. Walter Eglseder, M.D., who is not named as a Defendant in the instant case, applied the external hardware.  See [Document 32-1] at 24.

[3]  Defendants refer to the condition as a "colonization," while Plaintiff refers to it as an "infection."

2

not board certified in the same or a related specialty as Dr. Manson.

II. <u>NATURE OF THE MOTION</u>

Defendants characterize their Motion as seeking dismissal for lack of jurisdiction pursuant to Rule[4] 12(b)(1). Plaintiff seeks to characterize the Motion as a Motion for Summary Judgment pursuant to Rule 56. The distinction turns upon whether a valid certificate is a jurisdictional prerequisite or an essential element of a malpractice claim.

While the Court concludes that the certificate is a jurisdictional requirement,[5] the issue is moot. Even if the instant Motion were considered as a Motion for Summary Judgment,

---

[4] All Rule reference herein are to the Federal Rules of Civil Procedure.

[5] <u>See, e.g.</u>, <u>Davison v. Sinai Hosp. of Baltimore, Inc.</u>, 617 F.2d 361, 362 (4th Cir. 1980) ("The district court held that the . . . Act precludes the bringing of this suit without first complying with the . . . Act, which provides that the claim must first be presented to arbitration, and that compliance with this statute is a condition precedent to the bringing of the action. . . . We agree with the resolution of these issues by the district court . . . . (internal footnote omitted)); <u>Jones v. Bagalkotakar</u>, 750 F. Supp. 2d 574, 577 (D. Md. 2010) ("Compliance with the Act, where applicable, is a prerequisite to bringing a diversity suit in federal court."); <u>D'Angelo v. St. Agnes Healthcare, Inc.</u>, 853 A.2d 813, 822 (Md. Ct. Spec. App. 2004) ("The Court of Special Appeals of Maryland has stated that "The certificate of a qualified expert is an 'indispensable step' in the arbitration process. It is so important that, if the certificate requirement is not followed, a circuit court action will be dismissed, <u>sua</u> <u>sponte</u>. And, failure to file a proper certificate is tantamount to not having filed a certificate at all.")

there is no genuine issue of material fact regarding the adequacy of the Certificate.

III. <u>DISCUSSION</u>

The Certificate states:

> I certify that Dr. Theodore Manson, the attending physician and a surgeon at the University of Maryland Medical Center, deviated from the standard of care for surgery on July 19, 2010 by discharging Mr. Craddock from the University of Maryland Medical Center notwithstanding his daily fevers and drainage from the proximal pin sites. <u>Dr. Manson should have ordered that Mr. Craddock remain in the hospital for definitive therapy of his infection</u>. I certify that in the hospitalization at the University of Maryland Medical Center from July 27 to July 29, 20 l 0 to evaluate the evidence of infection and remove the external pins, <u>Dr. Manson departed from the standard of care by failing to remove all of the hardware to achieve definitive therapy of the infection</u>.
>
> The hospital facility, the University of Maryland Medical Center and the University of Maryland Medical System Corp., failed to follow the standard of medical care in July 2010 by and through the acts or omissions of Dr. Manson noted above.

[Document 32-1] at 43 (emphasis added).

Therefore, the Certificate states that Dr. Manson deviated from the pertinent standard of care:

1. On July 19 by discharging Plaintiff rather than ordering that he remain hospitalized for "definitive therapy of [his] infection."

2. On July 27-29 by "failing to remove all of the hardware to achieve definitive therapy of the infection."

4

A.   The July 19 Discharge

The question presented is whether, in regard to the July 19 decision to discharge Plaintiff, Dr. Petri is board certified in a related specialty as Dr. Manson.  As recognized by Judge Williams of this Court, a Maryland court examining whether "two [medical] specialties are related for purposes of the [Maryland Health Care Malpractice Claims] Act" must ask:

> (1) What is the procedure or procedures at the source of the claim?;
>
> (2) Is the procedure common to the two specialties?;
>
> (3) What experience does the purported expert doctor have with this specific procedure?; and,
>
> (4) Is the standard of care applicable to the procedure common to both?

Jones v. Bagalkotakar, 750 F. Supp. 2d 574, 581 (D. Md. 2010).

The court explained:

> If the procedure is one which both healthcare providers have experience with and the standard of care is purported to be similar, then the expert's qualifications satisfy the requirements of the Act. If a procedure is common to two specialties, an inference of relation is created between the two specialties. However, if the procedure is one which the purported expert does not have experience or performs with a meaningfully different standard of care, then the expert does not qualify under the Act.

Id.; see also DeMuth v. Strong, 45 A.3d 898, 911 (Md. Ct. Spec. App. 2012) ("We agree with the court in Jones that the word

5

'related' . . . as used to modify . . . board certification 'specialty' . . . embraces fields of health care and board certification specialties that, in the context of the treatment or procedure in a given case, overlap.").

In Nance v. Gordon, 62 A.3d 185 (Md. Ct. Spec. App. 2013), cert. denied 69 A.3d 475 (Md. 2013), the Court of Special Appeals of Maryland clarified the meaning of "related specialty":

> [W]here medical specialties overlap in the context of a particular treatment or procedure, "there also is an overlap of knowledge of the treatments and procedures among those health care providers certified in either specialty."

Id. at 192 (quoting Hinebaugh v. Garrett Cnty. Mem'l Hosp., 51 A.3d 673, 685-86 (Md. Ct. Spec. App. 2012)).

The Court finds that the procedure at issue in regard to the July 19 incident is the decision of whether to discharge Plaintiff or to treat him for an infection. This is, of course, a decision that commonly is made by a surgeon. However, it is also a decision that is squarely within the competence and experience of an infectious disease specialist. Moreover, there appears no basis to conclude that the standard of care would be different for a surgeon than for an infectious disease specialist with regard to the decision of whether to treat an infection. In the context of the July 19 incident, there was no problem with the surgical procedure per se; the only question was whether the Plaintiff had an infection requiring treatment – whether by

6

surgical or other means.

The Court concludes, therefore, that the Certificate was adequate with regard to the July 19 decision to discharge Plaintiff.

B.  <u>The July 27-29 Treatment</u>

The Certificate states that the standard of care deviation was the failure of Dr. Manson to remove the internal as well as the external hardware. That is, that Dr. Manson, having recognized that there was an infection and deciding to effect a cure by means of surgery, made the wrong surgical decision. In this context, the Court does not find that Dr. Petri was board certified in a specialty related to the board certification specialty of Dr. Manson.

Indeed, Dr. Petri has testified at his deposition that:

> Q.  Having looked at your CV, it does not appear that you've gone through an internship, residency or fellowship in general or orthopedic surgery; is that correct?
>
> A.  Yes.
>
> Q.  As part of your infectious disease practice do you perform any type of surgery?
>
> A.  No.
>
> . . . .
>
> Q.  How about in terms of making decisions with respect to the various surgeries that a complex fracture might require, or

7

       what internal or external fixation device might be used, are you ever the primary decision maker in that regard?

A.   No.

. . . .

Q.   In your experience here at UVA, the ultimate decision in terms of whether or not the internal fixation device would be removed in a patient like Mr. Craddock would be left up to the orthopedic surgeon, correct?

A.   As a consultant in infectious disease, the physician or surgeon consulting me is free to either accept or reject the recommendations that I'm making. So if that orthopedic surgeon is the responsible treating physician, then yes, that decision is going to rest with that surgeon. And in a different context if I'm the medical attending where the patient is my responsibility, the final decision would rest with me and might obligate me to get a second opinion if I disagreed with the conclusions of the consulting surgeon.

Q.   Ultimately, of course, it would be the surgeon who actually goes in the operating room and removes the device, correct?

A.   Yes.

Q.   In a patient like Mr. Craddock, what are the potential consequences to the patient of an early removal of internal hardware when you have a patient with a fracture like his?

A.   This is outside my expertise . . . .

Petri Dep. 6:8-7:1, 89:13-90:12.

     It is therefore, apparent, that in his practice, Dr. Petri

would rely upon a surgeon to decide whether to remove all hardware or just the external hardware.

### C. Is the Certificate Failure Curable?

As discussed at the hearing on the instant Motion, Plaintiff may seek to "cure" the certification problem by filing an amended and/or supplemental certificate with the MHCADRO or, perhaps, by taking other action. Defendants contend that it is not possible for Plaintiff to cure the inadequate certification. The matter had not been briefed and was not discussed in depth at the hearing.

Certainly, Plaintiff is free to take action to attempt to cure the problem created by the absence of a certificate of qualified expert as to the claims based upon Dr. Manson's decision not to remove the internal hardware. If Plaintiff can do so, he may file a motion for reconsideration of the Court's dismissal of the claims based on that decision of Dr. Manson.

IV.   CONCLUSION

For the foregoing reasons:

1. Defendants' Motion to Dismiss for Failure to File a Valid Certificate of Qualified Expert [Document 32] is GRANTED IN PART.

2. Plaintiff's claims based on the contention that, in the period from July 27 to 29, 2010, Dr. Manson negligently failed to remove all of the hardware implanted in Plaintiff are dismissed.

    a. Plaintiff shall, by August 10, 2015, file any motion for reconsideration based upon a contention that the certification issue has been "cured."

3. Plaintiff's claims based on the contention that Dr. Manson negligently discharged him from the hospital remain pending.

4. Scheduling leading to the trial of this case shall be set by further Order.


SO ORDERED, on Wednesday, June 10, 2015.


                                    /s/_____
                                 Marvin J. Garbis
                          United States District Judge